[No. F017627. Fifth Dist. June 24, 1993.]

THE PEOPLE, Plaintiff and Respondent,
JEFFREY DON BLOMDAHL, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part 2.

COUNSEL

Philip D. Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Clayton S. Tanaka and Janett H. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, P. J.**—Defendant entered a plea of nolo contendere to second degree robbery (Pen. Code, §§ 211/212.5, subd. (b)—count 1)[1] and forgery of an access card transaction (§ 484f, subd. (2)—count 2), and admitted four prior state prison commitments (§ 667.5, subd. (b)). Following the denial of defendant's motion to withdraw his plea, he was sentenced to state prison for a total term of 10 years, 8 months. On appeal, defendant contends the trial court abused its discretion in denying his motion to withdraw his plea, he was denied effective assistance of counsel, and sentencing error. We will affirm the convictions and modify the sentence.

### PROCEDURAL BACKGROUND

The facts underlying defendant's convictions are not pertinent to the issues raised on appeal and are omitted. Relevant procedural and other matters are included in the discussion that follows.

On October 2, 1991, at 11 a.m., defendant, represented by Deputy Public Defender Dana Kinnison, appeared in the municipal court for his preliminary

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

hearing and evidence was presented by the prosecution. The hearing was recessed until 1:30 that afternoon at which time defendant entered a nolo contendere plea pursuant to section 859a to the charges of robbery and forgery and also admitted the enhancement allegations as indicated above. A third count charging a violation of Vehicle Code section 10851 was dismissed on the People's motion. The matter was certified to the superior court for sentencing.

On October 30, 1991, defendant appeared in the superior court represented by Deputy Public Defender John P. Thomas, who informed the court that a conflict of interest existed. The court relieved the public defender as counsel for defendant. Defendant made a motion to withdraw his nolo contendere plea. The matter was continued to November 4, 1991, and remanded to the Bakersfield Municipal Court for appointment of new counsel and for a hearing on defendant's motion to withdraw his plea.

On February 10, 1992, the hearing on defendant's motion to withdraw his plea was held in the municipal court with defendant being represented by new appointed counsel, William L. Caraway. After testimony was taken from defendant and from Dana Kinnison, who was called by the prosecution, defendant's motion was denied and the matter was again certified to the superior court for sentencing. On February 24, 1992, defendant was sentenced to state prison for a total term of 10 years, 8 months.

DISCUSSION

1. *The trial court did not abuse its discretion in denying defendant's motion to withdraw his pleas.*

Defendant's motion to withdraw his pleas was premised on ineffective assistance of counsel prior to and at the time of his change of plea. The ineffective assistance claim was based on the following evidence presented at the hearing on the motion when defendant was represented by newly appointed counsel William Caraway.

Defendant testified he was arrested for robbery on September 16, 1991. About three days before his preliminary hearing he met with his appointed counsel, Dana Kinnison, and requested a live lineup be conducted, "Because beings how me not doing the robbery, I figured that could clear me of the robbery. [¶] There was a photo lineup that the victim had gone through and failed and so I figured well I want a physical lineup now, you know." Kinnison stated he did not think there was enough time to have a lineup before the preliminary hearing and he would try to get the hearing continued.

Defendant told Kinnison of an alibi witness by the name of "Stephanie" and that the telephone number of a friend with whom Stephanie was temporarily living was in his wallet. Defendant told Kinnison he would sign a release so Kinnison could obtain the number from his property at the jail but Kinnison said he would not get it at this time because the alibi witness would not be called to testify at the preliminary hearing. Prior to entering his pleas, defendant never agreed to not having a live lineup.

A reporter's transcript of proceedings held on October 2, 1991, in the municipal court was made a part of the record and considered by the court. At 8:35 a.m. on that date, defendant appeared with Mr. Kinnison before Judge Alan E. Klein, for his preliminary hearing. Mr. Kinnison made a request for a live lineup. The court indicated its reluctance to grant a continuance for that purpose and asked counsel to discuss the matter. The matter was again called at 11 a.m. before Judge H. A. Staley. Counsel stated that rather than continuing the preliminary hearing, it had been agreed defendant would be absent from the courtroom before the victims entered the courtroom and presented testimony in which they would describe the perpetrator of the charged offenses. Both Mr. Kinnison and defendant, personally, agreed to this procedure. After carefully explaining to defendant his right to be present during all of the proceedings and obtaining defendant's assurance that he understood his rights and still wanted to be absent during the testimony of the victims as indicated, the court ordered defendant removed from the courtroom. Donna Pitcher and Thomas Dobbins then testified in defendant's absence and gave detailed physical descriptions of the perpetrator.

The court then ordered defendant returned to the courtroom and both Ms. Pitcher and Mr. Dobbins identified defendant as the perpetrator and gave additional testimony concerning each of the charged offenses. The hearing was recessed until 1:30 p.m. When the hearing resumed, the court indicated it had been informed the defendant was going to "enter pleas to the first and second count, admit all allegations, be facing up to ten years, eight months in prison, and third count will be dismissed, due to insufficient evidence." After appropriate admonitions and waivers, the court accepted the pleas and admissions indicated.

Dana Kinnison was called as a witness by the People. He testified that after appearing before Judge Klein on October 2, 1991, he discussed the case in detail with his supervisor, Tony Heider, who then recommended "that we not proceed with any further efforts to arrange for a live [lineup]." Asked whether Mr. Heider gave any specific reasons for his recommendation, Kinnison replied: "He indicated that it would give the victim an opportunity

to successfully identify Mr. Blomdahl after having failed to do so in a photo lineup and he felt that we were advantageously situated with the failure to I.D. in the photo lineup."

Mr. Kinnison further testified that before the preliminary hearing began he explained Mr. Heider's recommendation and the reasons therefor to defendant and that he (Kinnison) joined in the recommendation. He also discussed with defendant the alternative procedure of "having Mr. Blomdahl sequestered during the initial I.D. testimony" at the preliminary hearing. Defendant appeared to understand the tactical reasons for the recommendations and also the alternative procedure where he would be absent from the courtroom during the witnesses' initial identification testimony. Kinnison did not recall defendant objecting to the procedure when the preliminary hearing was resumed or again stating that he wanted a live lineup. Nor did he recall defendant telling him that the alibi witness "Stephanie" would be moving and that it was important she be contacted before she did so.

Following presentation of argument by counsel, the court denied defendant's motion to withdraw, stating:

"THE COURT: The court will deny the motion, seems that for tactical reasons the defense decided not to go forward or to continue to push for a physical lineup.

"This court did take the unusual, with the defendant's consent, placing him out of the courtroom during the cross-examination, during the initial direct and cross, running [*sic*] the personal identification, allowing the defense at least to have an opportunity to cross-examine before the witness made—the opportunity to see the defendant in court.

"But in any event, the motion will be denied and the defendant be certified to Superior Court for sentencing February 24th, 8:30 Department 10."

■ "Section 1018 permits a trial court to allow a criminal defendant to withdraw his guilty plea 'for a good cause shown.' However, ' "the withdrawal of such a plea rests in the sound discretion of the trial court and may not be disturbed unless the trial court has abused its discretion." [Citation.] An appellate court will not disturb the denial of a motion unless the abuse is clearly demonstrated.' (*In re Brown* (1973) 9 Cal.3d 679, 685 [108 Cal.Rptr. 801, 511 P.2d 1153], quoting, in part, *People* v. *Francis* (1954) 42 Cal.2d 335, 338 [267 P.2d 8].) It is the defendant's burden to produce evidence of good cause by clear and convincing evidence. (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566-567 [116 Cal.Rptr. 242, 526 P.2d 250].)" (*People* v. *Wharton* (1991) 53 Cal.3d 522, 585 [280 Cal.Rptr. 631 [809 P.2d 290].)

■ Here, the basis of defendant's motion to withdraw his pleas was ineffective assistance of counsel which, in turn, was premised on Mr. Kinnison's alleged waiver (without defendant's consent) of defendant's right to a live lineup prior to the in-court identification of defendant at his preliminary hearing. ■ "In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.]" (53 Cal.3d at p. 575.) ■ The explanation given by Mr. Kinnison for his supervisor's recommendation that the demand for a live lineup not be pursued constituted a logical and reasonable tactical decision. Mr. Kinnison's concurrence in the recommendation was reasonable under the circumstances.

■ "To establish denial of the right to effective assistance of counsel, the defendant ' "must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, [he] must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." ' (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 581 [189 Cal.Rptr. 855, 659 P.2d 1144].)

"Ordinarily, matters involving trial tactics are not subject to judicial hindsight and the courts will not attempt to second-guess trial counsel . . . . 'It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [Citations.] [¶] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.' (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]; *In re Julius B.* (1977) 68 Cal.App.3d 395, 402 [137 Cal.Rptr. 341].)" (*People* v. *Kelley* (1990) 220 Cal.App.3d 1358, 1373 [269 Cal.Rptr. 900].)

■ Defendant asserts without citation to pertinent authority, "The right to a lineup is a fundamental due process right which cannot be waived by an attorney without the consent of his client." While it is true that counsel may not deprive the client of certain fundamental rights (see *People* v. *Turner* (1992) 7 Cal.App.4th 1214, 1220-1221 [10 Cal.Rptr.2d 358]), we are aware of no authority for the proposition asserted by defendant here. In our view, the decision of whether to demand a pretrial live lineup is a matter of trial tactics and strategy within counsel's authority to control, "despite differences of opinion or even open objections from the defendant." (*Id.* at p. 1220.) Just as a decision by counsel not to challenge a search or seizure does not constitute a waiver of a defendant's Fourth Amendment rights (*id.* at p. 1221), the decision by Mr. Kinnison not to pursue his request for a live

lineup did not constitute a waiver of defendant's due process rights. "[I]t is not the type of decision which is so fundamental that the defendant's choice must prevail over his attorney's contrary decision." (*Ibid.*) As noted above, Mr. Kinnison's election not to pursue his request for a live lineup prior to the preliminary hearing was a reasonable tactical decision under the circumstances. Therefore, even assuming defendant did not consent to or knowingly acquiesce in that decision, he has failed to show he received ineffective assistance of counsel. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to withdraw his pleas.

Defendant also argues for the first time on appeal that his pleas were "entered in ignorance under factors overreaching his free and clear judgment." Not only is this argument not cognizable on appeal because not raised below, it is utterly without support in the record. The record affirmatively shows defendant was fully and completely advised of his constitutional rights and of the consequences of his pleas and admissions, that he understood those rights and consequences, and that he knowingly and intelligently waived those rights and entered his pleas and admissions with a full and clear appreciation of the consequences. Defendant was not exactly a newcomer to the criminal justice system and acknowledged in his testimony that he entered his pleas "in the hopes of receiving a lighter sentence at sentencing. Pleading early on in the proceedings."

2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified by striking a one-year term imposed for a prior prison term for a total term imposed of nine years and eight months. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward copies to the appropriate authorities.

Ardaiz, J., and Thaxter, J., concurred.

---

*See footnote, *ante*, page 1242.