**Mark Steven VAN BUSKIRK, Petitioner–Appellant,**

v.

**George H. BALDWIN, Respondent– Appellee.**

No. 00–35640.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2001

Filed June 28, 2001

Amended Sept. 24, 2001

Craig E. Weinerman, Assistant Federal Public Defender, Eugene, Oregon, for the petitioner-appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: GOODWIN, GREENBERG,[1] and RAWLINSON, Circuit Judges.

## ORDER

The opinion filed June 28, 2001 in the above matter, No. 00–35640, and appearing at 255 F.3d 974, 977 (9th Cir.2001), is amended as follows:

1) Slip op. at 8205, lines 11–15; 255 F.3d at 977, lines 41–48 delete:

The first half of the question is whether the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for testing the adequacy of representation is trumped by the actual innocence claim propped up by the newly discovered expert testimony

Replace with:

The first half of the question is whether the expert testimony provided by Van Buskirk is newly discovered evidence sufficiently probative of actual innocence to allow him to pass through the *Schlup* actual innocence gateway in order to have his substantive *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) claim heard.

2) Slip op. at 8206; 225 F.3d at 978, first sentence of the second full paragraph: after "the district court's misstatement," delete "probably"

3) Slip op. at 8207–08; 225 F.3d at 978: Replace the last 4 paragraphs of the opinion, beginning with "Moreover" and ending with "cannot be excused" with the following:

The parties have briefed and argued the question whether 28 U.S.C. § 2254(e)(2) establishes a due diligence predicate to claims of actual innocence. Because we hold that the petitioner's proffered evidence was insufficient to satisfy *Schlup*'s threshold for asserting an "actual innocence" claim, it is not necessary in this case to reach the question whether the statute imposes a due diligence predicate.

With the opinion thus amended, the Northern California Innocence Project's motion for leave to file amicus curiae brief in support of appellant's petition for re-

---

1. The Honorable Morton I. Greenberg, United States Circuit Judge for the Third Circuit, sitting by designation.

hearing and petition for rehearing en banc is DENIED.

The panel has voted unanimously to deny the petition for rehearing. Judge Rawlinson has voted to deny the petition for rehearing en banc, and Judges Goodwin and Greenberg recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

## OPINION

GOODWIN, Circuit Judge:

Mark Steven Van Buskirk was convicted on his plea of guilty of murdering Linda Newman on March 15, 1993. After failing to obtain post conviction relief in the state courts, he filed a 28 U.S.C. § 2254 petition in the District of Oregon. He appeals the judgment denying relief. We affirm.

The petitioner's principal argument on appeal is that he was denied effective assistance of counsel throughout his state trial and post conviction proceedings because none of his lawyers sufficiently investigated his mental health history and thereby denied him an insanity defense. On September 6, 1994, he filed a state post-conviction petition. That petition identified two claims of trial court error and four claims of ineffective assistance of counsel, but these claims were unrelated to trial counsel's alleged failure to investigate petitioner's mental condition, and have been abandoned.

Van Buskirk filed his federal petition in 1997. The pending claims are therefore subject to the strict limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244 (2000). Under subsection (d)(1) of 28 U.S.C. § 2244, a one year limitations period "shall apply to an application for a writ of habeas corpus." That statute imposes a duty of due diligence by providing that the statute runs not only from the date on which the state court judgment became final, but from "the date on which the factual predicate of the claim or claims presented could have been discovered in the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Petitioner continued to pursue substantially his abandoned state court points in his original filing in the district court. It was not until December of 1998, with new counsel, that he filed an amended petition claiming for the first time that he was entitled to an insanity defense which his original counsel failed to investigate.

Petitioner now claims that his then counsel knew that his behavior at the time of his arrest, confession, and during preliminary proceedings was that of a mentally disturbed person. He claims that counsel should have learned about, recognized the significance of, and inquired about the result of, two automobile accidents in 1991 and 1992. He contends that competent counsel then would have learned that he had been in a coma for ten days, and that he had suffered severe brain damage. Counsel early on did know that Van Buskirk was an alcoholic, that he had been injured in an auto accident, and that he had demonstrated suicidal tendencies. Petitioner now claims that because counsel did not learn about his brain damage, which he asserts had so altered his personality that he was insane, or so emotionally disturbed at the time of the crime, that counsel was incompetent. Therefore, he now asserts that he is entitled to the "actual innocence" gateway to a delayed collateral attack on his conviction. See *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

The district court permitted Van Buskirk to amend. Pursuant to Fed.R.Civ.P. 15(a)(1), the amendment relates back to the original pleading. This appeal now raises two questions: (1) Is his amended petition time barred by 28 U.S.C. § 2244(d)(1)(D)? (2) If not, was it meritorious enough to require an evidentiary hearing?

The district court treated the amendment as relating back to the original petition, and therefore timely. For the purposes of this case we do not need to reach the complex questions lurking in the time bar of the AEDPA. The trial court decided the case on the merits, and on the merits it was right as a matter of law.

Petitioner attempts to support his belated restructuring of his case by tendering, as newly discovered evidence, the opinion of Dr. Muriel Lezak, a distinguished, internationally recognized consulting psychologist. Dr. Lezak's published writing on the relationship between brain damage and criminal responsibility has made her a familiar witness in criminal trials.

The district court assumed the reliability and qualifications of Dr. Lezak's opinion to the effect that the petitioner was insane or emotionally disturbed at the time of the crime. However, the district court held that the proffered testimony did not satisfy the *Schlup* exception for "actual innocence."

The district court found that Van Buskirk, by failing to raise the brain damage claim in the state courts, had procedurally defaulted on his new claim that trial counsel provided ineffective assistance by failing to investigate his mental condition. Van Buskirk argued that his default was not a knowing waiver and should be excused under *Schlup*. *See* 513 U.S. at 314, 115 S.Ct. 851. For this point he argues that the neuropsychological evaluation conducted by Dr. Lezak constituted newly discovered evidence that would allow him

to pass through the actual innocence gateway to present for the first time his theory that his counsel had been ineffective for completely different reasons than those he pursued in his post conviction proceedings in the state courts, and initially in the district court.

Dr. Lezak's report concluded that:

[t]he brain injury and resulting cognitive and control deficits would appear to have been sufficient to affect his ability to control his behavior (i.e., "conform the conduct to the requirements of the law") in that ideational preservation (he was completely focused on conforming his behavior to the standard he felt necessary to win his wife back-he was completely unappreciative of the nature of their relationship problems) plus the mental inflexibility that made him unable to take in and fully comprehend or even attend to-all the elements in the situation including alternative behaviors rendered him incapable of controlling his behavior to conform to what he knew was right or wrong. In short, inability to alter or redirect his mental focus exacerbated by acute emotional distress would make him even more single minded and thus at the moment actually incapable of thinking of other courses of action or about moral demands on his behavior other than that of preserving himself for his marriage.

The district court determined that Van Buskirk failed to show that he was actually innocent because the Lezak evaluation did not demonstrate that he satisfied the test under Oregon law for insanity and extreme emotional disturbance. The court further held that the evaluation did not establish actual innocence. The court noted that before Van Buskirk pled guilty, Dr. Robert Luther, the psychiatrist hired by the state, had reached a contrary conclusion. This leaves a compound question. The first

half of the question is whether the expert testimony provided by Van Buskirk is newly discovered evidence sufficiently probative of actual innocence to allow him to pass through the *Schlup* actual innocence gateway in order to have his substantive *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) claim heard. The second half of this question is whether, if the amended petition presents a new fact question, triable by a new jury, on the degree of homicide, or guilt or innocence, should the district court have had an evidentiary hearing to decide whether the guilty plea was the result of incompetent legal advice.

 Taking the first half of the question first, the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty of premeditated murder. See *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Van Buskirk contends that the district court's analysis misapplied the above standard and therefore must be reversed.

After restating the *Schlup* actual innocence gateway standard, the district court concluded that "Dr. Muriel Lezak's opinion is, at most, *an expert opinion that a jury could, under state law, choose to reject.*" (emphasis added). Van Buskirk takes issue with this statement, arguing that the court's conclusion that Van Buskirk failed to pass through the actual innocence gateway because a jury "could have" chosen to reject Dr. Lezak's opinion is inconsistent with the standard announced in *Schlup*. Petitioner contends that the district court confused the *Schlup* standard with the "insufficiency of evidence" standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The *Schlup* Court explained:

> [U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review. In contrast, under the gateway standard we describe today, the newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.... Second, and more fundamentally, the focus of the inquiry is different under *Jackson* than under *Carrier*. Under *Jackson*, the use of the word "could" focuses the inquiry on the power of the trier of fact to reach its conclusion. Under *Carrier*, the use of the word "would" focuses the inquiry on the likely behavior of the trier of fact.
>
> Indeed, our adoption of the phrase "more likely than not" reflects this distinction.

*Schlup*, 513 U.S. at 330, 115 S.Ct. 851.

The district court's statement implies that there was evidence that could have supported a jury's decision to convict-that the conviction was in the realm of possibility. But the statement does not predict the "likely behavior of the trier of fact," which is what is required under *Schlup*. *Id.*

Nevertheless, the district court's misstatement amounted to harmless error. After making the statement, the district court observed that Dr. Lezak's evaluation was inconsistent with much of the evidence in the record. Indeed, Dr. Luther's neuropsychiatric evaluation pronounced that Van Buskirk exhibited "no evidence of psychosis." The state showed that several mental health practitioners had declined to admit Van Buskirk for psychiatric treatment after he committed the offense. On the basis of this evidence, the district court observed that the record is "replete with uncontested evidence of Petitioner's actions and statements about the crime that are contrary to Dr. Lezak's opinion about his mental state at the time."

Thus, the court held that "even if [Dr. Lezak's] opinion was totally unrebutted (which it is not), [it] is not of sufficient probative force to allow this court to conclude that ... it is more likely than not

that no reasonable juror would have found Petitioner guilty of premeditated murder. ..." *Id.* It is therefore clear that the court was aware of and applied the correct "more likely than not" probabilistic standard under *Schlup,* even though it misstated the standard a few lines before.

The parties have briefed and argued the question whether 28 U.S.C. § 2254(e)(2) establishes a due diligence predicate to claims of actual innocence. Because we hold that the petitioner's proffered evidence was insufficient to satisfy *Schlup*'s threshold for asserting an "actual innocence" claim, it is not necessary in this case to reach the question whether the statute imposes a due diligence predicate.

**AFFIRMED.**