Christopher Sadao OSUMI, Petitioner,

v.

G.J. GIURBINO, Warden, Respondent.

No. CV 05–5184 CJCRC.

United States District Court,
C.D. California.

Aug. 15, 2006.

Christopher Sadao Osumi, Imperial, CA, pro se.

Lance E. Winters, Office of Attorney General of California, Los Angeles, CA, for Respondent.

ORDER ADOPTING FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CARNEY, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Final Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's and respondent's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Final Report and Recommendation is approved and adopted; (2) the Final Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Final Report and Recommendation and Judgment by the United States mail on the parties.

JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

FINAL REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Final Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

BACKGROUND

I

On January 30, 2002, in Los Angeles County Superior Court case no. SA043514, a jury convicted petitioner Christopher Sadao Osumi of two counts of second degree robbery in violation of California Penal Code ("P.C.") § 211, and the jury found petitioner personally used a deadly weapon, a knife, in committing the offenses

within the meaning of P.C. § 12022(b)(1); however, the jury found petitioner not guilty of forgery in violation of P.C. § 476. Clerk's Transcript ("CT") 116–22. In a bifurcated proceeding, petitioner admitted he had suffered two prior convictions within the meaning of the Three Strikes law, P.C. §§ 667(b)-(i) and 1170.12(a)-(d), and within the meaning of P.C. § 667(a)(1). CT 149–51. Petitioner was sentenced to the total term of 39 years to life in state prison. CT 149–56.

Petitioner appealed his convictions and sentence to the California Court of Appeal, CT 157, which affirmed the judgment in an unpublished opinion filed November 15, 2002. Lodgment nos. A3–A5. On December 31, 2002, petitioner filed a petition for review in the California Supreme Court, which was denied on January 29, 2003. Lodgment nos. A6–A7.

On December 15, 2003, petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court, which denied the petition on January 7, 2004, with citation to *In re Dixon*, 41 Cal.2d 756, 759, 264 P.2d 513 (1953). Lodgment nos. B1–B2. On April 12, 2004, petitioner filed a habeas corpus petition in the California Court of Appeal, which was denied on April 28, 2004, with citation to *In re Clark*, 5 Cal.4th 750, 763–87, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993) and *In re Swain*, 34 Cal.2d 300, 303–04, 209 P.2d 793 (1949). Lodgment nos. B3–B4. Finally, on August 6, 2004, petitioner filed a habeas corpus petition in the California Supreme Court, which was denied on June 29, 2005. Lodgment nos. B5–B6.

## II

The California Court of Appeal, in affirming petitioner's convictions and sentence, made the following findings regarding the facts underlying the convictions: On September 29, 2001, and again on October 5, 2001, petitioner entered the 7–Eleven store at Santa Monica Boulevard and Glendon Avenue in West Los Angeles, brandished a knife and robbed Manmohan Singh, the clerk. Lodgment no. A5 at 2.

## III

On July 6, 2005, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus. On September 8, 2005, respondent filed his answer to the petition, and petitioner filed his reply to the answer on January 6, 2006. On May 16, 2006, respondent filed an application for leave to file an amended answer, to tardily raise the defense of the untimeliness of petitioner's habeas corpus petition, and this Court denied respondent's request on May 17, 2006.

Petitioner raises the following claims in the pending petition:

Ground One—Ineffective assistance of trial counsel, who: (a) "failed to challenge suggestive six-pack lineup which lead [sic] to irreparable mistaken identity at the preliminary hearing and at trial"; (b) "failed to request an *Evans* [1] lineup that lead [sic] to irreparable mistaken identity at the preliminary hearing and at trial"; (c) "failed to utilize the services of an eyewitness expert"; (d) "failed to utilize the services of a fingerprint expert"; (e) "failed to file a *Pitchess* [2] motion in a case where officer

---

1. *Evans v. Superior Court*, 11 Cal.3d 617, 114 Cal.Rptr. 121, 522 P.2d 681 (1974). In *Evans*, the California Supreme Court held "due process requires in an appropriate case that an accused, upon timely relief therefor, be afforded a pretrial lineup in which witnesses to the alleged criminal conduct can partici-

pate." *Id.* at 625, 114 Cal.Rptr. 121, 522 P.2d 681, 114 Cal.Rptr. at 126, 522 P.2d 681.

2. *Pitchess v. Superior Court*, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (1974). In *Pitchess*, the California Supreme Court held that a criminal defendant may discover police personnel records in appropriate cases. *Id.*

misconduct was an absolute defense"; and (f) "errors are individual and cumulative"; and

Ground Two—"The trial court violated petitioner's constitutional rights to an impartial and unanimous jury and his right to the benefit of jury nullification by instructing the jury pursuant to CALJIC No. 17.41.1 . . . ."

On May 18, 2006, this Court filed its initial Report and Recommendation, recommending petitioner's habeas corpus petition be denied on the merits. On June 1, 2006, respondent filed Objections to the Report and Recommendation, which did not address the Court's findings and determinations and raised the sole claim that the Report and Recommendation "should have also recommended that the Petition be denied because it is untimely." Objections at 1:25–2:1. Since this Court denied respondent's request to amend his answer to raise an untimeliness defense, respondent's Objections can be read to either claim that the Court should have sua sponte addressed the timeliness of petitioner's habeas corpus petition or the Court should have allowed respondent to amend his answer to add a statute of limitations defense. This Final Report and Recommendation incorporates the original Report and Recommendation and also addresses respondent's Objections to that Report and Recommendation.

## DISCUSSION

### IV

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "district courts are permitted, but not obligated, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, —— U.S. ——, ——, 126 S.Ct. 1675, 1684, 164 L.Ed.2d 376 (2006). "Of course, before acting on its own

initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id.* (citations omitted). "Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* (citations omitted).

Here, the Court finds the interests of justice would be better served in addressing the merits of petitioner's claims, rather than considering sua sponte the timeliness of petitioner's filing, since the parties have already briefed the merits of petitioner's claims and addressing the statute of limitations issue would require more briefing, and, thus, delay the issuance of the decision on the merits. Even if the Court had allowed respondent leave to file an amended answer raising a statute of limitations defense, the Court still would have denied petitioner's habeas corpus petition on the merits. *See Van Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir.2001) (Court may properly deny petition on merits rather than reaching "the complex questions lurking in the time bar of the AEDPA."), *cert. denied*, 535 U.S. 950, 122 S.Ct. 1347, 152 L.Ed.2d 250 (2002); *Cooper v. Calderon*, 274 F.3d 1270, 1275 n. 3 (9th Cir.2001) (per curiam) (denying petition on merits rather than remanding to consider equitable tolling), *cert. denied*, 538 U.S. 984, 123 S.Ct. 1793, 155 L.Ed.2d 677 (2003).

Furthermore, under Rule 15(a) respondent may only amend his answer "by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). Leave to amend "should be guided by the underlying purpose of Rule 15(a) . . . which [is] to facilitate decision on the mer-

at 536–40, 113 Cal.Rptr. at 900–03, 522 P.2d 305.

its, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir.2004) (quoting *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir.2001)).

As noted above, the pending habeas corpus petition was filed July 6, 2005, and respondent filed his answer on September 8, 2005. Yet, it was not until May 18, 2006, almost a year after the petition was filed, that respondent sought to amend his answer to raise the statute of limitations defense. Briefing on the statute of limitations issue would have taken several months, especially if petitioner would have been required to explain his allegedly "unreasonable delay" in exhausting his state court remedies, and to produce declarations supporting his explanation. Thus, the Court denied respondent leave to amend his answer because such amendment would have delayed issuance of the decision in this matter. *See Yong v. Immigration & Naturalization Serv.*, 208 F.3d 1116, 1119 (9th Cir.2000)("[T]he [habeas] statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" (citation omitted)).

■ Additionally, the Court denied respondent's request to file an amended answer, raising the statute of limitations defense, because such defense would have been futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)(court may properly deny leave to amend where amendment would be futile); *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir.2004)("Futility alone can justify the denial of a motion for leave to amend."), *cert. denied*, 543 U.S. 1188, 125 S.Ct. 1395, 161 L.Ed.2d 192 (2005). Here, the AEDPA's

statute of limitations began to run on April 30, 2003, ninety (90) days after the California Supreme Court denied petitioner's request for review, and expired on April 29, 2004, one year from when his state court decision became final. *Whalem/Hunt v. Early*, 233 F.3d 1146, 1147 (9th Cir.2000) (en banc); *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.1999). However, the one year statute of limitations was tolled from December 15, 2003, when petitioner filed his habeas corpus petition in the Los Angeles County Superior Court, until June 29, 2005, when the California Supreme Court denied petitioner's habeas corpus petition.[3] *Carey v. Saffold*, 536 U.S. 214, 225, 122 S.Ct. 2134, 2141, 153 L.Ed.2d 260 (2002); *Delhomme v. Ramirez*, 340 F.3d 817, 819 (9th Cir.2003) (per curiam); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000).

However, respondent contends that under *Evans v. Chavis*, ── U.S. ──, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006), petitioner unreasonably delayed filing his habeas corpus petitions in the California Court of Appeal and California Supreme Court, and, therefore, is not entitled to statutory tolling for the intervals between those petitions. The Court disagrees. In *Chavis*, the Supreme Court held that the unexplained filing delay of at least six months by a California inmate is not reasonable, but the Supreme Court did not establish a bright-line rule regarding delays of less than six months. *Id.*, 126 S.Ct. at 854. Here, there was a three month or 96–day interval between the Superior Court's decision and petitioner filing his habeas corpus petition in the California Court of Appeal, and, similarly, a three month or 98–day

---

**3.** At the time petitioner filed his habeas corpus petition in the Superior Court, he had "used" 229 days of his allotted 365 days, and he had 136 days left on the limitations period in which to file a federal habeas petition.

Since petitioner filed the pending habeas corpus petition on July 6, 2005—a week after the California Supreme Court denied his habeas corpus petition—it was clearly filed timely.

interval between the California Court of Appeal's decision and petitioner filing his habeas corpus petition in the California Supreme Court. These delays are not unreasonable given the lengthy briefs petitioner filed in the California appellate courts and petitioner's substantial rewriting of his habeas corpus petition following the denial of that petition by the Los Angeles County Superior Court. *See Stowers v. Evans,* 2006 WL 829140, *2–3 (E.D.Cal.) (87–day interval between Superior Court's denial of habeas corpus petition and subsequent filing of habeas corpus petition in California Court of Appeal not unreasonable). Therefore, petitioner did not unreasonably delay filing his habeas petitions in the California appellate courts, and he is entitled to statutory tolling from December 15, 2003, through June 29, 2005. Since petitioner's habeas corpus petition is timely, respondent's request for leave to amend was properly denied as futile.

## V

■ The AEDPA "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review and habeas corpus petition without comment or citation to authority. *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002), *amended by,* 311 F.3d 928 (9th Cir.2002); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000), *cert. denied,* 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing Ground Two, this Court will consider the reasoned opinion of the California Court of Appeal denying the claim on the merits. *Yee v. Duncan,* 441 F.3d 851, 856 (9th Cir.2006); *Garcia v. Carey,* 395 F.3d 1099, 1103 n. 7 (9th Cir.2005). However, since no state court has provided a reasoned decision addressing the merits of Ground One, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's ultimate decision to deny this claim was contrary to, or an unreasonable application of, clearly established federal law. *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *Pham v. Terhune,* 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

## VI

■ To succeed on an ineffective assistance of trial counsel claim, a habeas petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Roe v. Flores–Ortega*, 528 U.S. 470, 476–77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. *Williams*, 529 U.S. at 390–91, 120 S.Ct. at 1511–12; *Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000); *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Williams*, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17.

■ To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Williams*, 529 U.S. at 391, 120 S.Ct. at 1511. In reviewing trial counsel's performance, the court will "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066; *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will the petitioner meet this initial burden. *Morrison*, 477 U.S. at 386, 106 S.Ct. at 2588; *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2068.

If the petitioner makes this showing, he must then establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Williams*, 529 U.S. at 391, 120 S.Ct. at 1511–12. The errors must not merely undermine confidence in the outcome of the trial, but must result in a fundamentally unfair proceeding. *Williams*, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17; *Lockhart*, 506 U.S. at 369, 113 S.Ct. at 842–43. However, a court need not determine whether counsel's performance was deficient before examining whether prejudice to defendant resulted from the alleged deficiencies. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); *Smith*, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 (same).

### a. Disciplinary Action Against Trial Counsel:

■ To support his ineffective assistance of counsel claim, petitioner attaches to his habeas corpus petition evidence showing his trial attorney, Curtis M. Shaw, was publicly reproved by the State Bar of California on March 30, 1979, Petition, Exh. L, and subsequently, on March 3, 2003, resigned from the State Bar with charges pending against him. Petition, Exhs. K, M. Apparently, the charges

against Mr. Shaw stemmed from his participation in an automobile insurance fraud ring, his failure to file state income tax returns, and his filing false tax returns to evade state income tax. *Id.*

However, to show his attorney was ineffective, the petitioner must show incompetence or ineffective in his trial, not in some unrelated proceeding. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2069; *see also United States v. Ross,* 338 F.3d 1054, 1056–57 (9th Cir.2003) (attorney suspended from practice before start of defendant's trial is not per se ineffective) (per curiam), *cert. denied,* 540 U.S. 1168, 124 S.Ct. 1187, 157 L.Ed.2d 1218 (2004); *United States v. Mouzin,* 785 F.2d 682, 696–97 (9th Cir.) ("[T]he fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment."), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986); *United States v. Hoffman,* 733 F.2d 596, 599–601 (9th Cir.) (same), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). Therefore, the Court addresses petitioner's enumerated ineffective assistance of counsel claims. *Ross,* 338 F.3d at 1056; *Mouzin,* 785 F.2d at 697.

**b. Identification of Petitioner:**

At trial, Manmohan Singh, the 7–Eleven clerk who was working during both of the robberies, identified petitioner as the robber. Reporter's Transcript ("RT") 96:1–97:1. Previously, Mr. Singh identified petitioner as the robber in a photographic line-up. RT 76:22–80:1, 81:1–21, 98:10–28. Petitioner claims defense counsel was ineffective in failing to challenge Mr. Singh's in-court identification of petitioner based on an impermissibly suggestive photographic line-up. Specifically, petitioner

claims the photographic line-up was "suggestive" because petitioner's photograph was completely "natural," whereas the other photographs had a "red tint." Reply at 17–18, 21.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *United States v. Montgomery,* 150 F.3d 983, 992 (9th Cir. 1998), *cert. denied,* 525 U.S. 917, 119 S.Ct. 267, 142 L.Ed.2d 220 (1999) and 525 U.S. 989, 119 S.Ct. 460, 142 L.Ed.2d 412 (1999). "It is the likelihood of misidentification which violates a defendant's right to due process...." *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Montgomery,* 150 F.3d at 992. Thus, to successfully challenge identification testimony, a defendant must show the State's pre-trial or in-court identification procedures were so unduly suggestive as to give rise to a substantial likelihood of misidentification. *Biggers,* 409 U.S. at 198, 93 S.Ct. at 381–82; *United States v. Beck,* 418 F.3d 1008, 1012 (9th Cir.2005).

Even assuming as true petitioner's claim that his photograph was shaded differently than the other photographs in the photographic line-up, this slight difference in shading does not make the photographic line-up impermissibly suggestive.[4] *See, e.g., United States v. Burdeau,* 168 F.3d 352, 357–58 (9th Cir.) (photographic array not unduly suggestive when defendant's photograph was darker than others,

---

4. Indeed, prior to the photographic line-up, Mr. Singh was admonished to "pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs." RT 77:8–78:14.

placed in center, and was the only one with eyes closed), *cert. denied,* 528 U.S. 958, 120 S.Ct. 388, 145 L.Ed.2d 303 (1999); *United States v. Johnson,* 820 F.2d 1065, 1073 (9th Cir.1987) (photographic array not unduly suggestive when defendant's photograph was hazier than others); *United States v. Sambrano,* 505 F.2d 284, 286 (9th Cir. 1974) (photographic array not unduly suggestive when defendant's photograph was darker and clearer than others); *United States v. Lincoln,* 494 F.2d 833, 839 (9th Cir.1974) (photographic array not unduly suggestive when defendant's color driver's license photograph was shown with black and white copies of driver's licenses or other types of photos).

■■■ Moreover, even if the photographic line-up had been unduly suggestive, under the "totality of the circumstances," Mr. Singh's identification of petitioner could, nevertheless, be considered reliable and, thus, admissible. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Montgomery,* 150 F.3d at 993. Under the "totality of the circumstances," the court should consider the following factors to determine whether an in-court identification is reliable: (1) the witness's opportunity to view the violator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the violator; (4) the level of certainty demonstrated by the witness at the pretrial identification; and (5) the length of time between the crime and the pretrial identification. *Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253; *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382.

■■■ Here, the "totality of the circumstances" show Mr. Singh's identification of petitioner was reliable. Mr. Singh was the store clerk on duty during both robberies, the store was well lighted, Mr. Singh had an ample opportunity to see the robber,

Mr. Singh was within four feet of the robber during the first robbery and within six to eight feet of the robber during the second robbery, and Mr. Singh paid close attention during the robberies, as shown by his detailed testimony. RT 95:12–113:9. Mr. Singh testified he "saw [petitioner] very closely" and "noticed his face" during the first robbery, so when petitioner returned to the store again on October 15, 2001, Mr. Singh triggered the alarm because he "immediately recognized" petitioner as the individual who had previously robbed the store. RT 96:11–15, 98:24–28, 100:19–22, 101:17–24. Furthermore, Mr. Singh identified petitioner's photograph as the individual who "looks like" the robbery suspect, RT 81:1–21, and the pretrial identification occurred less than two weeks after the second robbery. RT 78:15–79:13. Finally, Mr. Singh's description of petitioner was reasonably accurate. *See* Petition, Exhs. E, H. Thus, under the "totality of the circum-stances," Mr. Singh's identification of petitioner was reliable and admissible. *Brathwaite,* 432 U.S. at 114–15, 97 S.Ct. at 2253; *Simmons,* 390 U.S. at 385, 88 S.Ct. at 971–72; *United States v. Duran–Orozco,* 192 F.3d 1277, 1282 (9th Cir. 1999); *United States v. Jones,* 84 F.3d 1206, 1210 (9th Cir.), *cert. denied,* 519 U.S. 973, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996); *see also Denham v. Deeds,* 954 F.2d 1501, 1504–05 (9th Cir.1992) (identification was reliable when robber held victims at gunpoint for length of time, victims were "very close" to robber, positively identified robber from photograph few days later and victims again identified robber at trial).

Since any challenge by defense counsel to Mr. Singh's in-court identification of petitioner would have been rejected by the trial court, defense counsel was not ineffective in failing to make a futile motion. *See Rupe v. Wood,* 93 F.3d 1434, 1444–1445 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient per-

formance."), *cert. denied,* 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997); *Lowry v. Lewis,* 21 F.3d 344, 346 (9th Cir.) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), *cert. denied,* 513 U.S. 1001, 115 S.Ct. 513, 130 L.Ed.2d 420 (1994).

### c. Pretrial Line-up:

 Under California law, "due process requires in an appropriate case that an accused, upon timely request therefor, be afforded a pretrial lineup in which witnesses to the alleged criminal conduct can participate." *Evans,* 11 Cal.3d at 625, 114 Cal.Rptr. at 126, 522 P.2d 681. " 'The right to a lineup arises, however, only when eyewitness identification is shown to be in material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve.' " *Id.,* 114 Cal.Rptr. at 126, 522 P.2d 681. Petitioner claims defense counsel was ineffective in failing to request an *Evans* line-up prior to petitioner's preliminary hearing. However, "the decision of whether to demand a pretrial live lineup is a matter of trial tactics and strategy within counsel's authority to control," *People v. Blomdahl,* 16 Cal.App.4th 1242, 1248, 20 Cal.Rptr.2d 491 (1993), and petitioner's mere speculation is insufficient to overcome the presumption that defense counsel exercised reasonable professional judgment in opting not to seek a pretrial line-up during which Mr. Singh would have another opportunity to identify petitioner. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Blomdahl,* 16 Cal.App.4th at 1248, 20 Cal.Rptr.2d 491; *People v. Rivera,* 127 Cal.App.3d 136, 149–50, 179 Cal.Rptr. 384 (1982), *cert. denied sub nom., Rivera v. California,* 457 U.S. 1123, 102 S.Ct. 2942, 73 L.Ed.2d 1338 (1982).

### d. Eyewitness and Fingerprint Experts:

 Petitioner also claims defense counsel was ineffective in failing to present expert testimony regarding the accuracy of eyewitness identification and in failing to call a fingerprint expert. However, "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett,* 130 F.3d 365, 373 (9th Cir.1997); *Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir.2001). Here, petitioner has presented absolutely no evidence, such as a declaration, setting forth what an expert would have said and how such testimony would have benefitted petitioner. Thus, this claim has no merit.

### e. *Pitchess* Motion:

 Petitioner also claims defense counsel was ineffective in failing to make a *Pitchess* motion. However, petitioner has failed to identify any evidence his trial counsel would have gleaned had he filed a *Pitchess* motion, and petitioner's mere speculation regarding evidence possibly contained in the arresting officers' personnel files is manifestly insufficient to demonstrate petitioner was in any manner prejudiced by trial counsel not filing a *Pitchess* motion. *Wildman,* 261 F.3d at 839; *Grisby,* 130 F.3d at 373 (9th Cir. 1997).

### f. Cumulative Error:

 "The cumulative error doctrine in habeas recognizes that, even if no single error were prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." *Parle v. Runnels,* 387 F.3d 1030, 1045 (9th Cir.2004) (internal quotation marks omitted), *cert. denied,* 544 U.S. 1041, 125 S.Ct. 2274, 161 L.Ed.2d 1073 (2005). Here, petitioner claims prejudice has been shown when his ineffective

assistance of counsel claims are considered cumulatively. However, because this Court has found there is no merit to petitioner's ineffective assistance of counsel claims, petitioner has not shown cumulative error. *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir.2002); *Rupe*, 93 F.3d at 1445.

## VII

■■■■■■ A faulty jury instruction will constitute a violation of due process only where the instruction by itself so infected the entire trial that the resulting conviction violates due process. *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 1832, 158 L.Ed.2d 701 (2004); *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). The instruction must be more than merely erroneous; rather, petitioner must show there was a " 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.' " *McNeil*, 541 U.S. at 437, 124 S.Ct. at 1832 (citations omitted); *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990); *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir. 1992) (en banc), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *see also Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which [an allegedly faulty] instruction was used, it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *McGuire*, 502 U.S. at 72, 112 S.Ct. at 482

(citation omitted); *Naughten*, 414 U.S. at 147, 94 S.Ct. at 400.

■■■■ In Ground Two, petitioner claims the trial court violated his constitutional rights when it instructed the jury with CALJIC no. 17.41.1, which provides:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

CT 105; RT 154:13–23. The California Court of Appeal rejected petitioner's claim, holding:

> These claims were rejected in *People v. Engelman* (2002) 28 Cal.4th 436, 444, 121 Cal.Rptr.2d 862, 49 P.3d 209, which held CALJIC No. 17.41.1 does not infringe upon a defendant's federal or state constitutional right to a trial by jury or to the state constitutional right to a unanimous verdict. However, in the exercise of its supervisory powers, the Supreme Court directed CALJIC No. 17.41.1 not be given in future trials to avoid the risk the instruction might be misunderstood or used by one juror to "browbeat[ ]" other jurors or cause the trial court unnecessarily to intrude upon the secrecy of deliberations. (*Id.* at p. 445.) Nothing in the record of this case indicates any of these risks materialized. There was no evidence of dissension among the jurors or any improper involvement of the trial court in the jury's deliberations. Indeed, the record shows the jury deliberated less than four hours without incident before reaching verdicts.[fn1] Accordingly, [petitioner's] claim of error fails.

[fn1] The jury retired to deliberate at 11:35 a.m. on January 3, 2002, recessed for lunch from 11:55 a.m. until 1:30 p.m., and reached their verdicts and findings at 4:10 p.m. that same day.

Lodgment no. A5 at 3.

 As an initial matter, there is no constitutional right to jury "nullification." *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir.1992); *see also Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) (noting no right to jury nullification in federal habeas corpus review of state conviction); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir.1997) ("[T]he power of juries to 'nullify' or exercise a power of lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.").[5]

 "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir.2004), *cert. denied*, 543 U.S. 1037, 125 S.Ct. 814, 160 L.Ed.2d 602 (2004); *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir.2004), *cert. denied*, 543 U.S. 1191, 125 S.Ct. 1408, 161 L.Ed.2d 197 (2005). In Brewer, the Ninth Circuit explicitly held that "no Supreme

Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing constitutional right." *Brewer*, 378 F.3d at 955–56. This holding controls and forecloses petitioner's claim for relief in Ground Two.

In sum, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Final Report and Recommendation; (2) adopting the Final Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

June 12, 2006.

---

5. The California Supreme Court has also stated:

> Jury nullification is contrary to our ideal of equal justice for all and permits both the prosecution's case and the defendant's fate to depend upon the whims of a particular jury, rather than upon the equal application of settled rules of law. As one commentator has noted: "When jurors enter a verdict in contravention of what the law authorizes and requires, they subvert the rule of law and subject citizens—defendants, witnesses, victims, and everyone affected by criminal justice administration—to power based on the subjective predilections of twelve individuals. They affect the rule of men, not law." A nullifying jury is essentially a lawless jury. [¶] We reaffirm, therefore, the basic rule that jurors are required to determine the facts and render a verdict in accordance with the court's instructions on the law.

*People v. Williams*, 25 Cal.4th 441, 463, 106 Cal.Rptr.2d 295, 311–12, 21 P.3d 1209 (2001) (citation omitted).